```
        IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ALABAMA
                  SOUTHERN DIVISION
```

JOHNNY E. WALKER,            }
                             }
    Plaintiff,              }
                             }    CIVIL ACTION NO.
v.                           }
                             }    00-AR-2253-S
PROVIDENT LIFE & ACCIDENT    }
INSURANCE CO.,               }
                             }
    Defendant.              }



### MEMORANDUM OPINION

Before the court is a motion filed pursuant to Rule 59, F.R.Civ.P., by defendant, Provident Life and Accident Insurance Company ("Provident"), seeking to alter or amend the judgment entered on September 29, 2003. Provident essentially makes two arguments: (1) that the court's damages calculation gives plaintiff, Johnny E. Walker ("Walker"), too much because the 180-day elimination period is not taken into account; and (2) that the judgment improvidently decides an issue that Provident has never reached, namely, whether Walker is permanently disabled under the "Any Occupation Disability" definition. Provident asks the court to reduce the award to $33,151.00 and to remand the case to it so that it can make the determination as to whether Walker is permanently disabled under the "Any Occupation Disability" definition. The motion will be granted in part and denied in part.

1



## Discussion

Provident's Supplemental Brief in Support of Summary Judgment maintains that in the event the court should reverse Provident's benefit denial under the two-year "Own Occupation Disability" definition, the court should remand to Provident for a benefits determination under the until-age-65 "Any Occupation Disability" definition. (Doc. #70, at 3 n.3) ("Although Provident maintains that Plaintiff is not eligible for any benefits, any determination that Plaintiff is eligible for coverage under the Any Occupation provisions of the policy should be made by Provident, as the claims administrator, on remand. *See Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1330 (11th Cir. 2001); *Jett v. Blue Cross & Blue Shield, Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989)."). Provident's argument is that because it denied Walker's benefits under the Plan's "Own Occupation Disability" definition initially, it has never considered the issue of Walker's alleged disability under the Plan's "Any Occupation Disability" definition. Although Provident cited *Levinson* in its brief as requiring remand, Provident has since corrected itself. In its Rule 59 motion Provident again raises the issue, but it now relies on the **dissent** of Judge Cox in *Levinson* and on the decisions of courts outside the Eleventh Circuit.

In *Levinson*, the Eleventh Circuit dealt with a claimant who

was appealing the denial of short-term disability benefits under ERISA. The district court had awarded the claimant both short-term and long-term disability benefits. The Eleventh Circuit held that remand is not required in every case. 245 F.3d at 1328 (rejecting Reliance's argument that even if the district court correctly determined that remand was not necessary to determine Levinson's initial eligibility for benefits under the plan, remand was required to determine the amount of benefits Levinson should receive). The Eleventh Circuit rejected the request for remand because "remand to Reliance to determine whether Levinson was still disabled would have hindered the goal of judicial economy." *Id.* at 1330. In the opinion Provident cites, Judge Cox dissented, "[t]he district court erred, however, by proceeding to conduct an inquiry into whether Levinson had remained disabled until the time of trial." *Id.* at 1332 (Cox, J., dissenting). While the majority recognized that remand is the general rule, the court rejected the dissent's arguments for remand and concluded that remand was not necessary **in every case**. *Id.* at 1330.[1]

At its core, Provident's remand argument is that the "Any

---

[1] This court apprised the parties that in an unpublished opinion in *Brewer v. BellSouth Communications, Inc.*, No. 02-11159 (11th Cir. March 12, 2003), a copy of which is attached, the Eleventh Circuit previously affirmed this court's decision to award both short-term and long-term disability benefits without exhausting the applicable administrative remedies. Although *Brewer* is not binding precedent, it is hard for this judge to ignore.

3

Occupation" provision of the Plan is not before this court because an ERISA claimant must exhaust his administrative remedies before bringing suit under 29 U.S.C. § 1132.[2] ERISA does not contain an explicit exhaustion provision. Nonetheless, the courts have created an exhaustion requirement based "upon [ERISA]'s text and structure as well as the strong federal interest encouraging private resolution of ERISA disputes." *Kross v. Western Elec. Co.*, 701 F.2d 1238, 1243-45 (7th Cir. 1983).

Provident relies on a Second Circuit decision for its argument that the exhaustion requirement is jurisdictional. *Peterson v. Continental Cas. Co.*, 282 F.3d 112 (2d Cir. 2001). There, Continental appealed the district court's award to Peterson of disability benefits beyond the initial twenty-four-month period prescribed by the plan. 282 F.3d at 114. In partially reversing the district court's award, the Second

---

[2] The majority of the cases cited by Provident do not stand for the principle that "[t]he law does not allow the Court to consider this decision until Provident does so." They hold that as a general rule a claimant must exhaust the plan's administrative remedies. *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 825-26 (1st Cir. 1988) (holding exhaustion of administrative remedies prerequisite to bringing suit); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3rd Cir. 1990) (affirming district court's dismissal of ERISA claims for failure to exhaust administrative remedies); *Makar v. Health Care Corp. of Mid-Atlantic (Carefirst)*, 872 F.2d 80, 82-83 (4th Cir. 1989) (holding that ERISA claimant must generally exhaust administrative remedies); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991) (holding that ERISA requires plaintiff to exhaust administrative remedies before filing suit).

Circuit held that "absent a determination by the plan administrator, federal courts are without jurisdiction to adjudicate whether an employee is eligible for benefits under an ERISA plan." *Id.* at 117 (citing *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 140-41 (2d Cir. 2000)). The fatal flaw in this analysis is that the exhaustion requirement is not jurisdictional, but merely prudential.

The Eleventh Circuit, in holding that ERISA requires a plaintiff to exhaust administrative remedies, has explained:

> Administrative claim-resolution procedures reduce the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decisionmaking process, and allow prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated.

*Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1227 (11th Cir. 1985). These policy reasons generally support requiring a claimant to exhaust the plan's internal appeal process before bringing a suit under 29 U.S.C. § 1332. In the ERISA context, the Eleventh Circuit has long recognized exceptions to the exhaustion requirement. *See Counts v. Am. Gen. Life & Acc. Ins. Co.*, 111 F.3d 105 (11th Cir. 1997); *Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897 (11th Cir. 1990). Whether to require exhaustion of administrative remedies in an ERISA case is left to the "sound discretion" of the district

court. *Perrino v. Southern Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000). The Eleventh Circuit reviews "[t]he decision of a district court to apply or not apply the exhaustion of administrative remedies requirement for ERISA claims ... only for a *clear* abuse of discretion." *Id.* This standard of review is completely inconsistent with a jurisdictional prerequisite, and for good reason. The exhaustion requirement is a prudential rule -- not a jurisdictional one as Provident argues.

This court rejected Provident's request for remand of the "Any Occupation Disability" question in the interest of judicial economy as well as of fairness. Provident says in its motion that the twenty-four-month "Own Occupation" period ended in October 2001. On April 22, 2003, this court remanded the "application for benefits to Provident [] and ORDER[ED] Provident to receive and evaluate whatever relevant information plaintiff furnishes." (Doc. # 58 at 2). Following this remand, Provident admitted that the new information demonstrates the steady deterioration of Walker's physical condition. (PLA-CL-00290). Despite Provident's admission[3] that the subsequently obtained evidence showed the initial disability diagnosis to be correct, Provident flatly rejected that evidence as untimely. *Id.*

The court has disagreed with Provident's "Own Occupation

---

[3] Provident states that "this information does offer support for Mr. Walker's contention that his condition is steadily worsening...." (PLA-CL-00290).

Disability" determination. It still disagrees. The Plan provides that the "Any Occupation" period "starts on the day following expiration of the Own Occupation Period and continues up to, but not in excess of, the Maximum Benefit Period." (Doc. #76, Ex.1 at 10). Payments only end when the beneficiary is no longer disabled or fails to provide proof of disability. *Id*. at 12. For reasons the court stated in its earlier memorandum opinion, the record does not indicate a change in disability status -- even under the "Any Occupation Disability" definition.

Reversing Provident's initial determination, the court took Provident at its word that the evidence obtained after the "Own Occupation" period ended would support further deterioration in Walker's condition. Provident may think differently. If its past approach to Walker's claim is any indication and this court remanded the case to Provident, Provident would again deny Walker long-term benefits. The theoretical possibility that Provident would grant long-term benefits on a second remand is such a slim possibility that it can be ignored.

The prudential concerns meant to be advanced by requiring an ERISA claimant to exhaust his administrative remedies before filing suit are not present here. Sending this case back to Provident for reconsideration yet again would be futile. Either Provident would agree with this court, in which case the remand would have accomplished nothing but delay, or it will find yet

another way to deny Walker's benefits -- even in the face of its admissions -- and limit his award to one for twenty-four months. Neither scenario promotes judicial economy.

As to the damages aspect, Walker concedes that plan benefits are not payable during the 180-day elimination period and that no interest accrues on the first payment dated November 20, 1999. A month has passed since the court entered a final judgment and Walker still has received no benefits. Accordingly, the court will calculate benefits as of November 20, 2003. The amount of past due benefits, with interest, as of that date is $62,844.11.

## Conclusion

By separate order, the court will amend the entry of final judgment for Walker consistent with this memorandum opinion.

DONE this 12th day of November, 2003.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 12, 2003
THOMAS K. KAHN
CLERK

No. 02-11159
Non-Argument Calendar

D. C. Docket No. 00-02478-CV-AR-S

JENNIFER BREWER,

Plaintiff-Appellee
Cross-Appellant,

versus

BELLSOUTH TELECOMMUNICATIONS, INC.,

Defendant-Appellant
Cross-Appellee.

Appeals from the United States District Court
for the Northern District of Alabama



MAR 2003

(March 12, 2003)

Before TJOFLAT, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

BellSouth Telecommunications, Inc. appeals the district court's order awarding Jennifer Brewer short- and long-term disability benefits pursuant to its

employee benefits plan and the provisions of the Employee Retirement Income Security Act of 1974 (ERISA).[1]

The district court awarded benefits to Brewer after determining that BellSouth's decision denying her claim for benefits was arbitrary and capricious. The court reached that determination by applying a heightened arbitrary and capricious standard of review to the decision made by the plan administrator. *See HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 993 (11th Cir. 2001) ("[T]his court has adopted the . . . heightened arbitrary and capricious [standard] where there is a conflict of interest" (internal quotation marks omitted).). The parties agree that this was the proper standard of review, but BellSouth argues that the court misapplied the standard when it failed to make findings with regard to whether BellSouth met its burden of proof at trial.

We review de novo the district court's conclusion that BellSouth's denial of benefits was arbitrary and capricious. *Newell v. Prudential Ins. Co. of Am.*, 904 F.2d 644, 649 (11th Cir. 1990). We review the factual findings underlying that conclusion for clear error. *Id.*

---

[1]Brewer cross-appeals the district court's decision not to award her attorney's fees. We, however, find nothing in the record that suggests that the district court abused its discretion in reaching that decision. *See Freeman v. Cont'l Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir. 1993) (per curiam) (providing that a district court's denial of fees is subject to review for abuse of discretion and that "[t]he law provides no presumption in favor of granting attorney's fees to a prevailing claimant in an ERISA action").

2

Application of the heightened arbitrary and capricious standard of review requires a district court to conduct a multistep inquiry. *HCA Health Servs. of Ga., Inc.*, 240 F.3d at 993. First, "the court [must] evaluate[] the claims administrator's interpretation of the plan to determine whether it is 'wrong.'" *Id.* "If the court determines that the . . . interpretation is 'wrong,' [it] then proceeds to decide whether the claimant has proposed a 'reasonable' interpretation of the plan." *Id.* at 994 (internal quotation marks omitted). Next, "the court [must] determine whether the claims administrator's wrong interpretation in nonetheless reasonable." *Id.* If so, the wrong interpretation is entitled to deference unless the plan administrator has a conflict of interest. *Id.* Where such a conflict exists, "the burden shifts to the claims administrator to prove that its interpretation of the plan is not tainted by self-interest. The claims administrator satisfies this burden by showing that its wrong but reasonable interpretation of the plan benefits the class of participants and beneficiaries." *Id.* at 994–95 (citation omitted).

The district court initially conducted this inquiry when it denied BellSouth's motion for summary judgment.[2] The case then proceeded to trial before an

---

[2] In its order, the court concluded that BellSouth failed to remove the taint of self-interest from its interpretation, but noted that it "could satisfy its burden by proving that the denial produced a 'benefit to the class of all participants and beneficiaries.'" It is clear that the court expected BellSouth to offer such a defense at trial. The fact that the court nonetheless awarded benefits to Brewer following the trial suggests that it ultimately concluded that BellSouth had not satisfied its burden.

3

advisory jury. In its subsequent posttrial order awarding disability benefits to Brewer, the court again applied the heightened arbitrary and capricious standard, but failed to address the last part of the multistep inquiry, which is whether the evidence presented at trial by BellSouth was sufficient to satisfy its burden of removing the taint of self-interest from its interpretation of the plan. BellSouth asserts that, "[a]bsent a finding on this point, the district court's decision must be reversed." We do not agree.

The district court's order is not subject to reversal for its failure to address whether BellSouth satisfied its burden at trial,[3] because we believe that the court

---

[3]BellSouth attempts to liken this case to *Lee v. Blue Cross/Blue Shield of Ala.*, 10 F.3d 1547, 1552 (11th Cir. 1994), a case in which we reversed a grant of summary judgment for the plaintiff and remanded the case due to the district court's failure to consider whether the defendant met its burden of showing that its interpretation was not tainted by self-interest. We believe, however, that this case is distinguishable, because the district court in *Lee* initially applied the wrong standard of review to the administrator's decision, employing a more deferential standard than the required heightened arbitrary and capricious standard. *Id.* Thus, the court did not have the opportunity to consider whether the defendant satisfied its burden under that standard. In this case, we believe that the court applied the correct standard and considered that question explicitly at the summary judgment stage and implicitly in its final order.

4

implicitly determined that it had not.[4] Thus, we find no reversible error in the district court's failure to address this issue explicitly in its order.

BellSouth also appeals the district court's determination that Brewer was entitled to receive long-term disability benefits, because it believes that Brewer failed to satisfy ERISA's requirement that a plaintiff exhaust her administrative remedies before bringing suit.

We previously noted,

> Our law is well-settled that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court. However, a district court has the sound discretion to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate, or where a claimant is denied meaningful access to the administrative review scheme in place.

*Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000) (citations omitted) (internal quotation marks omitted). We review "[t]he decision of a district court to apply or not apply the exhaustion of administrative remedies requirement for ERISA claims . . . only for a *clear* abuse of discretion." *Id.*

---

[4]BellSouth also argues that we need not remand this case to the district court for further fact finding, because it presented unrebutted evidence at trial that "its interpretation of the Plan was calculated to maximize benefits to the class of beneficiaries." The fact that the evidence was unrebutted, however, does not mean that it was sufficient to remove the taint of self-interest. Upon our own review of the evidence, we do not believe that it satisfied BellSouth's burden of showing "that its interpretation of its policy [wa]s calculated to maximize the benefits available to plan participants and beneficiaries at a cost that the plan sponsor can afford (or will pay)." *Brown v. Blue Cross & Blue Shield of Ala., Inc.*, 898 F.2d 1556, 1568 (11th Cir. 1990).

5

At trial, BellSouth's director of benefits testified that the process of determining whether a claimant was entitled to long-term disability benefits begins only after a claimant has been receiving short-term benefits for approximately eight months. At that point, BellSouth sends the claimant materials pertaining to the long-term disability plan. It was clear from the director's testimony that the process of applying for long-term benefits was initiated by BellSouth and was contingent upon whether the claimant already was receiving short-term disability benefits. Because Brewer initially was denied short-term benefits, BellSouth never initiated the process and she never had the opportunity to file a claim for long-term benefits. Thus, appealing the denial of those benefits would have been futile. We therefore conclude that the district court did not abuse its discretion in choosing not to apply the exhaustion requirement to Brewer's claim. *See id.* ("[A] district court has the sound discretion to excuse the exhaustion requirement . . . where a claimant is denied meaningful access to the administrative review scheme in place" (citation omitted) (internal quotation marks omitted).).

For the foregoing reasons, we AFFIRM.